IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-271-D

| | |
|---|---|
| KIMYA SWANN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOURCE ONE STAFFING SOLUTIONS, )<br>and UNITED PARCEL SERVICE, )<br>)<br>Defendants. ) | **ORDER** |

On May 22, 2009, Kimya Swann ("plaintiff" or "Swann") sued her former employer Source One Staffing Solutions, LLC ("defendant" or "Source One"). Swann alleges that Source One created a sexually hostile work environment in violation of Title VII and that Source One wrongfully discharged her in violation of North Carolina public policy in retaliation for complaining about sexual harassment.[1] On August 2, 2010, Source One moved for summary judgment [D.E. 23]. On September 11, 2010, Swann responded in opposition [D.E. 27]. On October 12, 2010, Source One replied [D.E. 31]. As explained below, the court grants Source One's motion for summary judgment.

I.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). The party

---

[1] Swann's complaint and amended complaint [D.E. 16] included two other state-law claims. See Am. Compl. ¶¶ 61–67 (count two), ¶¶ 77–86 (count four). In response to Source One's motion for summary judgment, Swann abandoned those two claims. See Pl.'s Mem. Opp'n 1–2, 19–20. In addition, Swann originally named United Parcel Service ("UPS") as a defendant, but voluntarily dismissed UPS on February 18, 2010 [D.E. 18].

seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Source One is a temporary staffing company with an office in Durham, North Carolina. Ahmed Decl. ¶ 3. Source One provides staffing services for UPS's facility in Durham, North Carolina, which is located approximately ten minutes from Source One's Durham office. Id.

On January 15, 2008, Source One hired Swann. See Ahmed Dep. 16–17; Swann Dep. 33. Anwar Ahmed, who was Source One's branch manager in Durham, made the decision to hire Swann. See Ahmed Dep. 16–17; Ahmed Decl. ¶¶ 2–3. Ahmed is responsible for all human resource issues at Source One's Durham branch. Ahmed Decl. ¶¶ 3–5. Ahmed assigned Swann to the Durham UPS facility. Id. Source One employees assigned to work at the Durham UPS facility sort packages and consolidate mail for distribution. Id. ¶ 4. In 2008, Source One had approximately 130–140 employees working at the Durham UPS facility. Id. ¶ 5. All mail sorters at the Durham UPS facility are Source One employees, and they sort the mail in an open warehouse, which is divided into four departments. Id. ¶ 4. Sorters typically work Monday through Saturday for six to seven hours. Id.

Swann was employed at will and did not have an employment contract. Id. ¶ 2. When hired, Swann received an assignment sheet concerning her work at the Durham UPS facility and Source One's attendance and tardiness guidelines. Id. ¶ 10, Exs. D & E; Swann Dep. 19, Ex 3. Under the Source One's attendance and tardiness guidelines, "[e]xcessive absence from work, tardiness, or

2

leaving early from work will lead to disciplinary action, up to and including termination." Ahmed. Decl., Ex. E. Employees also had to call the Source One office two hours before the scheduled start time if the employee was unable to report or would be late. Id. Additionally, employees had to remain on the job until all work was completed or the lead supervisor released the employee to go home. Ahmed Dep. 21–22; Swann Dep. 19, Ex. 3.

On her first day of work, Source One also provided Swann a copy of its policy against sexual harassment. See Swann Dep. 17–19, Ex. 2. Swann signed a copy of the policy acknowledging receipt. Id. The policy stated:

> Sexual harassment is illegal. It is the policy of Source One Staffing Solutions that all employees be able to enjoy a work environment free from all forms of unlawful discrimination, including sexual harassment. Sexual harassment damages employee's moral[e], and hurts the employment relationship. Anyone engaging in sexual harassment will be disciplined. This may result in TERMINATION.

Swann Dep., Ex. 2. The policy then gave various examples of sexual harassment. See id. The policy then stated:

> If you believe you have been subjected to harassment by a supervisor, management official, fellow employee, customer, client, vendor, or any other persons [connected] with your employment at Source One Staffing Solutions, you should promptly report any incidents to your supervisor. Whenever possible, clearly ask the harasser to stop, as a simple confrontation will often end the situation. If in spite of your efforts, the harassment continues or you believe that your immediate supervisor is involved in the harassment or that a previously reported complaint has not been satisfactorily resolved, you should contact your Human Resources Department
>
> Source One Staffing Solutions will thoroughly and promptly investigate all sexual harassment complaints. Information received will remain as confidential as possible under the circumstances. If we determine that the complaint is valid, we will correct the situation, where possible, may include in [sic] relocating you to a different location if you wish. Discipline will also be taken with the harasser, which may include termination. If it has been determined that you have filed a false claim, we will also discipline you, which may include termination.

Id.

In January 2008, Source One assigned Swann to work as a sorter at the Durham UPS facility. When Swann began working, Source One had two lead sorters at the Durham UPS facility: Bryant

3

Brown and Lass Lassiter. Ahmed Decl. ¶ 6. The lead sorters took direction from Tom Everett, a UPS employee. Ahmed Dep. 119. The lead sorters did not have the authority to hire or fire any Source One employee and did not have the authority to end a sorter's assignment at the Durham UPS facility. Id. at 138; Ahmed Decl. ¶ 6.

Throughout Swann's employment, Swann frequently was absent, tardy, or left work early. Company timecards and records reflect that Swann was absent eleven days between January and May 2008. See Ahmed Decl. ¶ 7, Ex. A; Ahmed Dep. 21, 24–26, 34–35, 131–37, Exs. 1 & 2. Ahmed regularly spoke with the lead sorters about attendance issues. See Ahmed Decl. ¶ 9. The lead sorters told Ahmed about Swann's absences, tardiness, and failure to remain on the job until all sorting work was completed. See Ahmed Dep. 34–37; Ahmed Decl. ¶ 9, Ex. C. Ahmed also reviewed the timecards and records, which revealed Swann's attendance issues and failure to call Source One in accordance with Source One's attendance and tardiness guidelines. See Ahmed Decl. ¶ 7, Exs. A, B; Ahmed Dep. 24–26.

On May 11, 2008, due to the staffing difficulties that Swann's attendance issues created, Ahmed decided to end Swann's assignment at the Durham UPS facility. See Ahmed Dep. 34, 142. Ahmed informed Swann of the decision. Id. at 37–38, 142. Swann's last day of work with Source One was May 10, 2008. During the time period between 2007 and February 2009, Source One terminated 23 employees at the Durham UPS facility for attendance issues. See Ahmed Decl. ¶ 10.

After ending Swann's assignment at the Durham UPS facility, Source One was not able to place Swann with another client. Ahmed Dep. 38–39. Swann then filed a claim for unemployment benefits with the North Carolina Employment Security Commission ("ESC"). The ESC held a telephone hearing concerning Swann's unemployment claims, but Source One did not participate due to a mistake with the telephone number. See Ahmed. Decl. ¶ 12.

In approximately October 2008, the ESC issued a decision concerning Swann's claim for unemployment benefits. See Ahmed. Dep. 40–42. The ESC decision stated that Swann testified

during the ESC hearing that Lassiter had sexually harassed her at the Durham UPS facility. Id. at Dep. 42. The ESC decision was the first notice that Ahmed received concerning Lassiter's alleged sexual harassment. Id. at 139; Ahmed Decl. ¶ 12.

On October 7, 2008, Swann filed an EEOC charge alleging that Lassiter sexually harassed her in violation of Title VII. See Swann Dep., Ex. 8. According to Swann's allegations, Bryant Brown left Source One at the end of March 2008, and Source One replaced Brown as one of the two lead sorters with LaShonda Lemon. Lassiter remained the other lead sorter. Swann contends that Lassiter sexually harassed her from April 2008 until her last day of work on May 10, 2008. See Swann Dep. 33–34, 36–37, 39–45, 88, 92. According to Swann, Lassiter asked her for a date, flirted with her, made sexual references, twice grabbed his genitals in front of her, crudely described a desire to have intercourse with her, threatened her once, squirted her shirt with a water bottle in order to see through her shirt, touched her twice without her consent, and showed her a photo of himself in a swim suit. See id.

Ahmed's office was located near the Durham UPS facility, and Ahmed frequently visited the Durham UPS facility. See Ahmed. Decl. ¶ 3. Ahmed spoke with Swann on several occasions during her employment with Source One. Id. During her employment with Source One, Swann never reported Lassiter's alleged sexual harassment to Ahmed. See Ahmed Dep. 142–43; Swann Dep. 62–63. Additionally, when Ahmed told Swann in May 2008 that he was ending her assignment at the Durham UPS facility, Swann did not mention Lassiter's alleged sexual harassment. Ahmed Dep. 142–45; Swann Dep. 62–63. Likewise, although Swann called Ahmed approximately four to five times during the timeframe encompassing the alleged harassment, she never mentioned in her messages anything about Lassiter's alleged sexual harassment. See Swann Dep. 48–49, 51–52, 62–63; Ahmed Dep. 106–08. Furthermore, after her termination from the assignment at the Durham UPS facility, Swann spoke with Ahmed about work opportunities with Source One, and she never

5

said anything to Ahmed about being sexually harassed. See Ahmed Dep. 143–45; Swann Dep. 62–63.

After Source One received the ESC decision in early October 2008, Ahmed spoke with Lemon and Lassiter about Swann's allegation of sexual harassment. See Ahmed Dep. 42–44; Ahmed Decl. ¶ 12. Lemon denied witnessing any sexual harassment, and Lassiter denied engaging in any sexual harassment. See Ahmed Dep. 44, 47–48; Ahmed Decl. ¶ 12. When Ahmed received Swann's October 7, 2008 EEOC charge, which included more details concerning the alleged sexual harassment, Ahmed conducted a more thorough investigation. See Ahmed Dep. 51, 54. Specifically, Ahmed interviewed 42 Source One employees assigned to the Durham UPS facility between January and May 2008 and asked: (1) Did you ever feel that you were sexually harassed by a Source One Supervisor or a Source One Lead?; (2) Did you ever witness any employee sexually harassed by a Source One Supervisor or a Source One Lead?; and, (3) Did you ever witness any employee reporting being sexually harassed to a Source One Supervisor or Source One Lead? See Ahmed Dep. 53–56, Ex. 3; Ahmed Decl. ¶ 12.

All employees or former employees (except two) answered "No" to each question. See Ahmed Decl. ¶ 12; Ahmed Dep. 59. The two current or former employees who did not answer "No" were Swann and her friend and co-worker Shameka Graves. Ahmed Dep. 59–61. Swann told Ahmed that Lassiter had sexually harassed her, and Graves told Ahmed that she had witnessed Lassiter sexually harass Swann. See Ahmed Dep., Exs. 3, 5. Ahmed asked Graves what she observed, and Graves responded that Lassiter flirted with Swann and made "over the top" and "sexual" statements to Swann. See Ahmed Dep. 90–91, 146, Ex. 5.

At the conclusion of the investigation, Ahmed determined that he could not substantiate the alleged sexual harassment. See Ahmed Dep. 113. Moreover, by the time Source One received Swann's EEOC charge and Ahmed concluded the investigation, Lassiter no longer worked for Source One. See Ahmed Decl. ¶ 6. Lassiter's mother died in the fall of 2008, and he resigned from

Source One and moved out of North Carolina. See Ahmed Dep. 74–80. Lassiter's resignation was unrelated to Swann's allegations. See id.

II.

Swann alleges that Source One subjected her to a sexually hostile work environment and thereby violated Title VII. See Compl. ¶¶ 51–57. To prove a hostile work environment claim, Swann must show that the offending conduct: (1) was unwelcome; (2) was based on a protected status; (3) was sufficiently severe or pervasive to alter her terms and conditions of employment and to create an abusive working environment; and (4) was imputable to her employer. See, e.g., Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (sexual harassment).

In examining whether the alleged harassment was sufficiently severe or pervasive, the court must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The work environment must have been "permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions" of plaintiff's work environment based on a protected reason (e.g., race, sex, or pregnancy). Harris, 510 U.S. at 21 (citation and quotation omitted). Simple teasing, sporadic use of abusive language, offhand comments, jokes related to protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Faragher, 524 U.S. at 788. Likewise, general complaints of rude treatment are not sufficient to sustain a hostile work environment claim. See, e.g., Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006).

Under Title VII, the "severe or pervasive" requirement has both an objective and subjective component. Harris, 510 U.S. at 21–22. The objective component is judged from the perspective of

7

a reasonable person in the plaintiff's position. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). In Faragher, the Court made clear that the "conduct must be extreme" to be actionable and that lower courts had appropriately applied the objective component and granted summary judgment where "the alleged harassment was not actionably severe or pervasive." Faragher, 524 U.S. at 788.

Genuine issues of material fact exist concerning whether Lassiter's conduct was unwelcome, based on Swann's sex, and sufficiently severe or pervasive to alter Swann's conditions of employment and to create an abusive working environment. See, e.g., EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327–29 (4th Cir. 2010); Ocheltree, 335 F.3d at 331; EEOC v. R&R Ventures, 244 F.3d 334, 339–40 (4th Cir. 2001). The parties' dispute, however, whether the conduct is imputable to Source One, and that dispute focuses on whether Lassiter's alleged sexual harassment culminated in Swann's termination, and, if not, whether Source One has established the Faragher-Ellerth affirmative defense.

Under Faragher-Ellerth, if a supervisor subjects a subordinate employee to sexual harassment, but the sexual harassment does not culminate in tangible employment action, then the employer may present an affirmative defense. See Faragher, 524 U.S. at 807–08; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762–63, 65 (1998); Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 265–66 (4th Cir. 2001); Brown v. Perry, 184 F.3d 388, 395 (4th Cir. 1999); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 182 (4th Cir. 1998) ("Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense. If [plaintiff's] termination did not result from a refusal to submit to [her supervisor's] sexual harassment, then [the employer] may advance [the affirmative] defense."). The affirmative defense requires the employer to prove: (1) "that the employer exercised reasonable care to prevent and to correct promptly any sexually harassing behavior," and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

8

Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765; Barrett, 240 F.3d at 265–66; Brown, 184 F.3d at 395; Lissau, 159 F.3d at 182.

Initially, the parties dispute whether the alleged sexual harassment culminated in tangible employment action. Source One contends that Ahmed, not Lassiter, terminated Swann's assignment at UPS. Source One also contends that Ahmed had no knowledge of Lassiter's alleged sexual harassment when he made the termination decision and that he made the termination decision after reviewing Source One timecards, payroll records, and receiving reports concerning Swann's attendance issues. The company records detailed Swann's frequent failure to comply with Source One's attendance and tardiness guidelines. See Ahmed Decl. ¶ 7, Exs. A & B; Ahmed Dep. 24–26.

In opposition, Swann initially disputes that she had attendance issues or failed to comply with Source One's attendance and tardiness guidelines. See Pl.'s Mem. Opp'n 17. Swann's timecard and attendance records, however, show that in her final month of employment, she was absent without excuse on April 12, April 16, April 24, April 26, and May 1, was tardy on April 17, and left early on April 25 and April 30. See Ahmed Decl. ¶ 7, Exs. A & B. These records are consistent with Swann's amended complaint and EEOC charge wherein she stated that Source One told her that she was "terminated due to unexcused absences" (Am. Compl. ¶ 48) and because she had "missed too many days." Swann Dep., Ex. 8. Moreover, Swann testified that she clocked in and out each day and that her timecards accurately reflected her work attendance. See Swann Dep. 20, 100. Swann also admitted missing work (without explanation) on April 24, April 26, and May 1. See id. at 54–56. Furthermore, Ahmed regularly reviewed timecards and payroll records to assess attendance and to verify reports of attendance issues that he received from Lemon and Lassiter. See Ahmed Decl. ¶¶ 7–9. Finally, the record demonstrates that Ahmed had no knowledge of Lassiter's alleged sexual harassment when he terminated Swann's assignment. Ahmed Decl. ¶ 12; Swann Dep. 62–63. In light of the record, Ahmed reasonably and honestly believed that Swann failed to comply

with Source One's attendance and tardiness guidelines and decided to terminate her assignment at the Durham UPS facility due to her attendance issues.

Alternatively, Swann argues that Lassiter, not Ahmed, made the termination decision. In support, Swann cites two conversations that she had during the week after her termination at the Durham UPS facility. First, she claims that she called Lemon during the week of May 12, 2008, to discuss her employment and Lemon told her that Lassiter had written "terminated" on Swann's timecard. See Swann Dep. 59–60. Swann then claims that she asked Lemon why she was terminated, and Lemon told her to call Ahmed. See id. Source One, however, produced all of Swann's timecards and no timecard has the word "terminated" written on it. See Ahmed Decl. ¶ 7, Ex. A. Moreover, Lemon's follow-up comment to call Ahmed supports the inference that Ahmed, not Lassiter, made the termination decision. Thus, Lemon's alleged comments do not permit a reasonable inference that Lassiter made the termination decision. See, e.g., Anderson, 477 U.S. at 249–52; Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).

Second, Swann claims that when she spoke with Ahmed during the week of May 12, 2008, to discuss continued employment opportunities with Source One, Ahmed stated, in effect, that "he couldn't go against Lass" and that "whatever decision Lass made was final." See Swann Dep. 60. These ambiguous statements of Ahmed, however, do not create a genuine issue of material fact concerning whether Lassiter decided to terminate Swann's assignment at the Durham UPS facility. See Anderson, 477 U.S. at 249–52. The timecards and attendance records establish that Swann violated Source One's attendance and tardiness guidelines, and Swann has adduced no evidence that Source One retained a similarly situated employee. Moreover, Ahmed testified that he made the decision to terminate Swann (Ahmed Dep. 36), that he had no knowledge of Lassiter's alleged sexual harassment when he made the decision (Ahmed Decl. ¶ 12), and that the leads had no authority to hire or fire employees or to terminate an employee's assignment. Ahmed Dep. 137–38; Ahmed Decl. ¶¶ 1–6. Furthermore, Swann admitted that she had no evidence to suggest that Lassiter had

10

authority to terminate her assignment and had no evidence to suggest that Ahmed knew of Lassiter's alleged sexual harassment. See Swann Dep. 60, 62–63, 75. In sum, no rational jury could find that Lassiter made the termination decision. See, e.g., Anderson, 477 U.S. at 249–52; Bouchat, 346 F.3d at 519; Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Because Lassiter's alleged sexual harassment did not culminate in tangible employment action, Source One may assert the affirmative defense. See, e.g., Ellerth, 524 U.S. at 765–66; Brown, 184 F.3d at 395; Lissau, 159 F.3d at 182.

As for the first requirement of the affirmative defense, Source One must show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Faragher, 524 U.S. at 807. An employer's distribution of an anti-harassment policy provides "compelling proof that the [employer] exercised reasonable care in preventing and promptly correcting sexual harassment." Barrett, 240 F.3d at 266 (quotation omitted); Lissau, 159 F.3d at 182. An employee may rebut proof concerning an employer's anti-harassment policy by showing that "the employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." Barrett, 240 F.3d at 266 (quotation omitted).

Here, the parties agree that Source One distributed an anti-harassment policy. Indeed, Swann admits receiving and signing for a copy of the policy on her first day of work. See Swann Dep. 17–19, Ex. 2. The record also shows that Source One enforced the policy. See Ahmed Decl. ¶ 11; Ahmed Dep. 92–94. Specifically, during the time period in which Swann worked for Source One, Ahmed received one allegation of sexual harassment involving an alleged comment that a male sorter at the Durham UPS facility made to a female sorter. See Ahmed Dep. 92–96. Ahmed promptly investigated the alleged sexual harassment, concluded that the male sorter made an inappropriate comment, and terminated the male sorter. See id.; Ahmed Decl. ¶ 11. Thus, Source One has established the first element of the affirmative defense. See, e.g., Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 268–69 (4th Cir. 2001); Barrett, 240 F.3d at 266–67.

11

As for the second requirement of the affirmative defense, Source One must show that "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765; Barrett, 240 F.3d at 265–66; Brown, 184 F.3d at 395; Lissau, 159 F.3d at 182. "[P]roof that a plaintiff employee failed to follow a complaint procedure will normally suffice to satisfy the employer's burden under the second element of the defense." Brown, 184 F.3d at 395; Dowdy v. North Carolina, 23 F. App'x 121, 123 (4th Cir. 2001) (per curiam) (unpublished).

As mentioned, Source One's anti-harassment policy instructs the employee to ask the harasser to stop and to report any incident of harassment to the employee's supervisor. Swann Dep., Ex. 2. The policy also states that if "the harassment continues or you believe that your immediate supervisor is involved in the harassment or that a previously reported complaint has not been satisfactorily resolved, you should contact your Human Resources Department" and report the sexual harassment. Id. The policy states that Source One "will thoroughly and promptly investigate all sexual harassment complaints" and "correct the situation." Id.

In connection with whether she reported the alleged sexual harassment to her supervisor, Swann offered conflicting statements. In Swann's amended complaint, she stated that she "did not feel she could go to Ms. Lemon to complain about Mr. Lassiter's harassment." Am. Compl. ¶ 38. In contrast, during her deposition, Swann testified that, at some point in April or May 2008, she complained to Lemon about Lassiter's alleged sexual harassment and that Lemon stated that Lassiter was just joking. See Swann Dep. 52–53. According to Swann, Lassiter's alleged sexual harassment continued after her complaint to Lemon, and her complaint to Lemon was not resolved satisfactorily. See id.

For purposes of summary judgment, the court credits Swann's deposition testimony that she complained to Lemon, but the complaint was not resolved satisfactorily. At that point, the policy directed Swann to contact the Human Resources Department and report Lassiter's alleged sexual

12

harassment. See Swann Dep., Ex. 2. Swann testified that she called Ahmed and left messages with his secretary or on his voice-mail to call her, but admits that she never mentioned anything about sexual harassment in her messages. See Swann Dep. 51–53, 62–63.

In failing to tell Ahmed that Lassiter was sexually harassing her, Swann failed to follow the complaint procedure and failed to act reasonably. See, e.g., Matvia, 259 F.3d at 269; Barrett, 240 F.3d at 267–68; Brown, 184 F.3d at 395. "Little can be done to correct . . . objectionable behavior unless the victim first blows the whistle on it." Barrett, 240 F.3d at 268. Moreover, after making these phone calls and leaving these messages, Swann spoke with Ahmed on or about May 16, 2008, and admits that she (again) did not mention anything about Lassiter's alleged sexual harassment. See Swann Dep. 62–63; see also Ahmed Dep. 143–45. Instead, Ahmed first learned in October 2008 that Swann believed Lassiter was sexually harassing her in April and May 2008. See Ahmed Dep. 139; Ahmed Decl. ¶ 12. When Ahmed learned of the allegations in October 2008, he investigated the alleged harassment and conducted an even more extensive investigation upon receiving Lassiter's October 7, 2008 EEOC charge. In light of the record, Source One has established that Swann "unreasonably failed to take advantage of any preventative or corrective opportunities provided by [Source One] or to avoid harm otherwise." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765; Matvia, 259 F.3d at 269; Barrett, 240 F.3d at 265–66; Brown, 184 F.3d at 395; see also Nurse "Be" v. Columbia Palms W. Hosp. Ltd., 490 F.3d 1302, 1309–12 (11th Cir. 2007); Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1365–66 (11th Cir. 1999) (per curiam).

In sum, Source One has established both elements of the affirmative defense. Thus, the court grants summary judgment to Source One on count one.

III.

Swann alleges that Source One discharged her from employment in retaliation for complaining about sexual harassment and thereby violated North Carolina public policy. See Am. Compl. ¶¶ 68–76 (count three). In making her wrongful discharge claim, Swann relies on N.C. Gen.

13

Stat. § 143-422.2[2] as the source of North Carolina's public policy. Section 143-422.2, however, does not create a private right of action for retaliation or provide a source of public policy concerning retaliation. See, e.g., Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting), dissent adopted by 359 N.C. 625, 614 S.E.2d 531 (2005) (per curiam); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003); Haley v. Wal-Mart Stores East, L.P., No. 5:07-CV-219-D, 2008 WL 5069073, at *4 (E.D.N.C. Nov. 17, 2008) (unpublished); Efird v. Riley, 342 F. Supp. 2d 413, 428 & n.9 (M.D.N.C. 2004); Stout v. Kimberly Clark Corp., 201 F. Supp. 2d 593, 607 (M.D.N.C. 2002); Bradley v. CMI Indus., Inc., 17 F. Supp. 2d 491, 499 (W.D.N.C. 1998). Accordingly, Source One is entitled to summary judgment on this claim.

In opposition, Swann seeks to use her memorandum in opposition to Source One's motion for summary judgment to recharacterize her wrongful discharge claim as one based on sexual harassment resulting in discharge. Compare Pl.'s Mem. Opp'n 18–20 with Am. Compl. ¶¶ 68–76; cf. McLean, 332 F.3d at 720–21; Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). Swann may not, however, use her memorandum in opposition to Source One's motion for summary judgment to amend her complaint. See, e.g., Barclay White Skanska, Inc., v. Battelle Mem'l Inst.,

---

[2] N.C. Gen. Stat. § 143-422.2 states:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.
>
> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

N.C. Gen. Stat. § 143-422.2.

262 F. App'x 556, 563 (4th Cir. 2008) (unpublished); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 542–43 (E.D.N.C. 2008). Furthermore, this court's scheduling order required the parties to meet the "good cause" standard under Rule 16 of the Federal Rules of Civil Procedure for any motion to amend filed after February 1, 2010 [D.E. 11]. Swann has not even attempted to meet (much less met) the "good cause" standard under Rule 16. See, e.g., Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298–99 (4th Cir. 2008). Thus, the court grants Source One's motion for summary judgment on count three.

IV.

In sum, defendant's motion for summary judgment [D.E. 23] is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This 24 day of February 2011.

JAMES C. DEVER III
United States District Judge